IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

HOWELL WOLTZ,

          Plaintiff,

v.                                      CIVIL ACTION NO.   5:10-cv-00980

THOMAS CLIFTON and
DAVID BERKEBILE,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

On August 2, 2010, Plaintiff, Howell W. Woltz, acting *pro se*, filed a Petition for Writ of Quod Computet, (hereinafter "Complaint") naming as Defendants Thomas Clifton, former Trustee of the FCI Beckley Inmate Trust Fund, and David Berkebile, former Warden of FCI Beckley, in their official and individual capacities, and requesting that the Court order an independent audit of the Inmate Trust Fund at FCI Beckley.[1]  (Document 1).   By Standing Order (Document 2) entered on August 3, 2010, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.   On October 4, 2011, Jeffery T. Mauzy filed a notice of appearance on behalf Mr. Woltz, thereby withdrawing the reference to Magistrate Judge

---

1  Plaintiff claims that "[n]o means exist at present other than a writ of quod computet for [him] to determine or discover the amount and value of stolen, converted or misappropriated assets . . . [.]" (Document 1 ¶ 16.) Magistrate Judge VanDervort correctly found that a petition for Writ of Quod Computet is no longer a recognized action and construed Plaintiff's filing as a civil action alleging that Defendants used money from the Trust Fund in violation of 31 U.S.C. § 1321. (Document 5 at 3). Thus, the Court regards Plaintiff's Petition as a Complaint.

VanDervort. (Document 21). In addition, Thomas A. Rist filed a notice of appearance on behalf Mr. Woltz on December 8, 2011. (Document 25).

The Court has reviewed *Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment* (Document 23). After careful consideration of Plaintiff's Complaint, Defendants' Motion, the parties' supporting memoranda and all written submissions relative thereto, the Defendants' motion shall be granted.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that he is a beneficiary of the Inmate Trust Fund ("Trust Fund") and that Defendants breached their fiduciary duty to him as a beneficiary. (Document 1 ¶ 4, 6.) Plaintiff claims the parties' relationship is based solely on their trustee-beneficiary relationship and "involves such confidence and trust so as to entitle one of the parties to an accounting in equity under law." (*Id.* ¶¶ 10-11.) Plaintiff alleges that "little[,] if any[,] benefit from the Fund [has] actually reach[ed] the inmates during his two and a half years at the prison, while [he has seen] extravagant amounts improperly squandered on the staff and guards, on information and belief, from the Inmate Trust Fund." (*Id.* ¶ 19.) Plaintiff further claims that "[l]avish parties, expensive props, liquor, food, and entertainment at the 'Training Center' are common at FCI/FPC Beckley and the funding will, on information and belief, be proven to have come from the Inmate Trust Fund, quite inappropriately." (*Id.* ¶ 20.) Plaintiff attached to his Complaint an Affidavit of Inmate Daryl Parker, as well as his own Affidavit. Mr. Parker's June 24, 2010, Affidavit states his belief that money from the Inmate Trust Fund has been used to pay for supplies and props for BOP staff

parties, which included alcohol. (Document 1 at 9). Also, Mr. Parker claims the BOP staff used Trust Fund money to purchase televisions for their use instead of inmate use. (*Id.*) Plaintiff states in his Affidavit that he observed the intentional shredding of new Multi-Print labels, which he claims was wasteful. (Document 1 at 10). It is unclear how Plaintiff's Affidavit relates to his claims of impropriety in the management of the Trust Fund.

On December 7, 2011, Defendants filed their Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, based on Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. (Document 23).

## II. *LEGAL STANDARD FOR MOTION TO DISMISS*

Under Rule 8(a)(2), a plaintiff must provide a "short and plain statement of the claim showing . . . entitle[ment] to relief," and is not required to plead specific facts in the complaint. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A defendant may challenge the complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted . . .." Fed. R. Civ. P. 12(b)(6).

In reviewing a motion to dismiss under Rule12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . .." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a) (2006), requires inmates to properly exhaust available administrative remedies prior to filing civil actions challenging the conditions of their confinement.[2] *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to bring an action in federal court "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore*, 517 F.3d at 725. (citing *Woodford*, 548 U.S. at 87). "[T]]here is no futility exception to the PLRA's exhaustion requirement." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). The exhaustion of administrative remedies is an affirmative defense, rather than a jurisdictional requirement, and

---

2 The exhaustion provision of the PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a)

thus, inmates need not plead exhaustion, nor do they bear the burden of proving it. *See Jones v. Bock*, 549 U.S. 199, 212 (2007); *see also Anderson*, 407 F.3d at 725.

"Funds of Federal prisoners" are specifically identified by Congress as trust funds. 31 U.S.C. § 1321(a)(21) (2006). "Amounts . . . that are analogous to the funds named in subsection (a) of this section and are received by the United States Government as trustee shall be deposited in an appropriate trust fund account in the Treasury." 31 U.S.C. § 1321(b)(1). "[A]mounts accruing to these funds are appropriated to be disbursed in compliance with the terms of the trust." *Id.* "The 'Commissary Fund' is generally referred to as the 'Trust Fund'." Federal Bureau of Prisons Program Statement 4500.07, Trust Fund/Deposit Fund Manual, § 2.1(a) (Apr. 19, 2010). The "Trust Fund [is] designed primarily for the benefit of inmates." *Id.* at § 2.1(b). BOP Policy requires principal financial statements and an annual report be prepared by Trust Fund Branch staff.[3] *Id.* at § 2.2(a). Importantly, "[u]pon request, these statements and the report may be made available to the public." *Id.* Also, "Trust Fund financial records are audited or reviewed in accordance with Department of Justice and Bureau requirements." *Id.* Section 2.3 (d) of the Trust Fund Manual lays out in great detail the manner in which Trust Fund profits may and may not be expended.[4] Notably, "[q]uestions regarding appropriate uses of Trust Fund profits are directed to the Chief, Trust Fund Branch." *Id.* at § 2.3(d)(4).

Plaintiff admits that a case involving claims based on "prison conditions" is subject to exhaustion, but argues that this case does not involve a "prison condition." (Document 29 at 3). In addition, Plaintiff does not contend that the administrative remedy process was unavailable to

---

3 The Trust Fund "is maintained using Generally Accepted Accounting Principles (GAAP)." Federal Bureau of Prisons Program Statement 4500.07, Trust Fund/Deposit Fund Manual, § 2.2.
4 Trust Fund profits may be used on prizes, award, recreational activities, and various other programing. *Id*. at § 2.3 (d)(1). Trust Fund profits may not be used for individual items of clothing or property for inmates, pay-per-view television events or movies, etc. *Id*. at § 2.3 (d)(3).

5

him, which, if unavailable, would discharge his obligation to exhaust under the PLRA. (*Id.*) The only issue before the Court is whether the Plaintiff's claim of impropriety in the management of the Trust Fund is a "prison condition," which requires exhaustion. Plaintiff argues this "case has nothing to do with *prison life* as the *Porter* definition encompasses." (Document 29 at 3-4). In support, Plaintiff contends that unlike in *Porter*, where the alleged beating of an inmate by a correctional officer was determined to be a prison condition, here "injunctive relief is being sought which would determine whether prisoner trust funds had been misappropriated." (Document 29 at 3). Plaintiff cites no authority that supports the assertion that Trust Fund issues are not prison conditions. However, Plaintiff must exhaust his administrative remedies even when he is requesting injunctive relief. *Goist v. U.S. Bureau of Prisons*, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047 (2003). Thus, Plaintiff's assertion that the PLRA exhaustion does not apply to the instant case because he seeks injunctive relief is simply not correct.

"[P]rison conditions" is specifically defined as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison . . . [.]" 18 U.S.C. § 3626(g)(2). The Court finds that Plaintiff's argument is without merit. In order to be a beneficiary of the Trust Fund, Plaintiff must be an inmate currently incarcerated in a BOP facility. *See Maydak v. United States*, 630 F.3d 166 (D.C.Cir.2010) (dismissing Plaintiffs' claims for reimbursement to the inmate trust fund as moot because such claim can only be pursued by current federal prisoners). Plaintiff's claims pertain to a Trust Fund, exclusively available to federal inmates, which Trust Fund profits must be used for the benefit of such federal inmates in their "prison lives." The appropriateness of

particular Trust Fund purchases or access to Trust Fund financial records clearly are issues relative to and potentially impacting on "prison life." For example, Trust Fund profits may be expended on soft drinks, snacks, talents shows, movies, cable television, educational material, games, movies, speakers, and other entertainment for federal inmates. Federal Bureau of Prisons Program Statement 4500.07, Trust Fund/Deposit Fund Manual, § 2.3 (d)(2). Thus, the Trust Fund profits are supposed to be expended on items, services, and programs that clearly relate to "prison life," which necessarily means that any challenge to the appropriateness of such expenditures pertains to the same. The Court finds that Plaintiff's claim involves a "prison condition," which requires him to exhaust administrative remedies prior to filing suit and that Plaintiff's claim is precisely the type of claim which was intended to require exhaustion under the PLRA, particularly here, where the relief requested appears to be readily available through the administrative process[5].

Accepting the factual allegations of the Complaint to be true, the Court finds that Plaintiff undeniably failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). Accordingly, Defendant is entitled to dismissal of the Plaintiff's Complaint.

## IV. CONCLUSION

WHEREFORE, the Court hereby **ORDERS** that *Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment* (Document 23) be **GRANTED** and that this matter be

---

5 The Court notes that the Central Office Trust Fund Branch is responsible for responding to questions "regarding appropriate uses of Trust Fund profits . . . [.]" Federal Bureau of Prisons Program Statement 4500.07, Trust Fund/Deposit Fund Manual, § 2.3 (d)(4). Furthermore, as noted above, financial statements and annual reports prepared by Trust Fund staff are available to the public upon request to the Central Office. *Id*. at § 2.2 (a). Thus, it appears to the Court that the information and audit Plaintiff seeks is available through the administrative remedies process as well as available to the public.

**DISMISSED**.   Further, the Clerk is directed to **REMOVE** this matter from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 1, 2012

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA